610 A.2d 1042

COMMONWEALTH of Pennsylvania, Appellee,

v.

Steven Keith ANDERSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed July 15, 1992.

206

G. Roderick Snyder, Reading, for appellant.

Hugh Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

Bradley S. Bridge, Asst. Public Defender, Philadelphia, amicus curiae.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge.

This is an appeal from the judgment of sentence imposed upon Anderson after a jury convicted him of attempted murder,[1] aggravated assault[2] and possession of an instrument of crime.[3] Timely filed post-verdict motions were denied by the trial court and Anderson was sentenced to serve consecutive terms of imprisonment of not less than four nor more than eight years for attempted murder, not less than six nor more than twelve years for aggravated assault, and not less than one nor more than two years for possession of an instrument of crime. A direct appeal to this Court followed. We affirm.

1. 18 Pa.C.S. § 901(a) and § 2501(a) (Purdon 1983).
2. 18 Pa.C.S. § 2702(a)(1) (Purdon 1983 & Supp.1991).
3. 18 Pa.C.S. § 907(a) (Purdon 1983).

When defense counsel failed to file an appellate brief, Anderson's direct appeal to the Superior Court was dismissed. Pursuant to his petition for post conviction relief, however, the Superior Court granted Anderson the right to file a direct appeal *nunc pro tunc*, limited to the issues previously raised in post-trial motions. Before a three-member panel of this Court, Anderson charged the trial court with three errors: (1) refusing to permit Anderson to conduct a demonstration before the jury regarding the manner in which he usually held a shotgun; (2) refusing to grant a new trial because of adverse mid-trial publicity; and (3) failing to merge his convictions for aggravated assault and criminal attempt murder for sentencing purposes.

The panel found no error on the trial court's part regarding Anderson's first and second challenges. On the issue of merger, however, the panel held that aggravated assault is a lesser included offense of attempted murder and therefore the convictions merged for sentencing.[4] Pursuant to the panel's decision, the judgment of sentence was vacated and the case was remanded for resentencing. The Commonwealth's Petition for Reargument *En Banc* was granted because of the conflict the *Anderson* panel's decision created with another Superior Court panel decision, *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990).

The same three issues presented to the panel are before this Court sitting *en banc*. The facts as summarized by the trial court are as follows:

4. As will be discussed below, the *Anderson* panel relied on *Commonwealth v. Shurgalla*, 371 Pa.Super. 244, 537 A.2d 1390 (1988), and similar cases in finding merger applicable. Continued reliance on *Shurgalla* is misplaced. The current standard for merger is not, as stated in *Shurgalla*, that merger occurs where the same operative facts underlie both convictions and the two crimes with which a criminal defendant are convicted share essential elements. Fact-based merger has been abolished in Pennsylvania. According to *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), both the factual predicate *and* each and every element of the crimes must be identical. The elements of the lesser included offense must be capable of being wholly subsumed by the elements of the greater offense.

The incident in question occurred in the early evening of October 31, 1987 at the home the defendant shared with the victim, Norma DeBooth, and her nine year old son. Ms. DeBooth was standing at the kitchen sink preparing dinner when she was shot in the back of the neck by the defendant. Wile [sic] the defendant alleges that he was merely cleaning the gun when it went off, Ms. DeBooth, now paralyzed, testified in open court that the defendant in fact told her he was going to shoot her immediately before she was actually shot.

Trial Court Opinion at p. 1–2.

■ During direct examination at trial, defense counsel asked Anderson, "Now, how do you normally hold your rifle when you aim it at something?" The prosecutor objected to this question and the trial court sustained the objection. Defense counsel made no offer of proof in response and the issue was not pursued. Post-trial, Anderson revisited the issue, asserting that the trial court's ruling prevented him from establishing for the jury that the shooting had been accidental. Anderson claims the demonstration would have bolstered his version that the shooting occurred while he was seated at the kitchen table cleaning his shotgun, and that it would have cast doubt on the victim's testimony that Anderson shot her while standing upright.

We find no merit in this argument. In this Commonwealth, "wide discretion is vested in the trial judge in permitting demonstrations or experiments to be made in the presence of the jury." *Commonwealth v. Thomas*, 394 Pa.Super. 316, 323, 575 A.2d 921, 924 (1990) (quoting *Commonwealth v. Soli*, 273 Pa.Super. 158, 165, 417 A.2d 216, 219 (1979)). The trial court reasoned, "The proper issue for discussion is not how the defendant normally holds the gun but how he held the gun on that particular occasion." Trial Court Opinion at p. 4. Anderson was permitted to fully explain his version of the shooting as an accident. Any self-serving demonstration regarding how Anderson normally holds a gun would have been irrelevant to how the shooting at hand occurred. Because the admission of evi-

dence, with respect to relevance, rests largely within the discretion of the trial court, and the requested demonstration would have shed no light on the manner of this shooting, we find no abuse in the trial court's ruling.

■ Anderson's second challenge, that the trial court erred in denying his new trial motion on grounds of midtrial publicity, is also without merit. During the trial, two articles involving this case appeared in the Reading paper. Neither was on the front page nor highlighted in any other manner. We find The Honorable Calvin E. Smith correctly addressed this issue in his opinion of January 27, 1989, and, on the basis of that opinion, we affirm.

■ The issue which brings the matter to the court *en banc* is the third and most troublesome issue Anderson raises: Whether crimes of attempted murder and aggravated assault merge for sentencing purposes. We note initially that, although Anderson did not raise his third issue at the trial court level, the issue of merger implicates the legality of sentencing, and, therefore, may not be waived. *See Commonwealth v. Campbell*, 351 Pa.Super. 56, 505 A.2d 262 (1986), *alloc. denied*, 517 Pa. 602, 536 A.2d 1327 (1987); *Commonwealth v. Blassingale*, 391 Pa.Super. 395, 571 A.2d 426, *alloc. denied*, 526 Pa. 627, 584 A.2d 311 (1990). We hold that, under the current merger test and the particular facts of this case, the crime of aggravated assault is not a lesser included offense of attempted murder and, therefore, the two crimes do not merge for sentencing purposes.

The common law doctrine of merger in Pennsylvania was significantly altered by the Supreme Court in its recent decisions of *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989) and *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989). In *Leon Williams*, the Supreme Court granted an allowance of appeal to decide the question of whether convictions merge for sentencing purposes when they arise from the same criminal act. Leon Williams pleaded guilty to aggravated assault, criminal

attempt at robbery, and unlawful restraint as a result of charges which arose from a May 30, 1986, incident where Williams attacked a sixty-one-year-old woman. Attempting to rob the woman, Williams grabbed her from behind, choked her and threw her to the ground. Hearing the victim's screams, neighbors came to her aid and Williams ran from the scene before he was able to complete the robbery. Subsequently, Williams was apprehended and positively identified by the victim. As a result of the attack, the victim suffered a broken nose, fractured skull and foot, black eyes, cuts, bruises, abrasions, and psychological trauma.

Williams was sentenced to five to ten years for aggravated assault, a consecutive term of one and one-half to ten years for attempted robbery, and a consecutive term of one and one-half to five years for unlawful restraint; Williams' aggregate sentence thus was eight to twenty-five years. His motion for reconsideration was denied and Williams appealed to this Court. A panel of this Court partially vacated the judgment of sentence and remanded for resentencing. The panel majority's basis for its disposition was that the unlawful restraint conviction merged with the aggravated assault and the attempted robbery convictions for sentencing purposes. *Commonwealth v. Leon Williams*, 368 Pa.Super. 315, 534 A.2d 101 (1987). The panel grounded this result on their belief that the unlawful restraint of the victim was coextensive with the restraint occasioned by the aggravated assault and attempted robbery of the victim. In other words, the panel majority found that the aggravated assault and attempted robbery " 'necessarily included' the unlawful restraint involved such that proof of both the aggravated assault and the criminal attempt robbery required proof of the acts upon which the unlawful restraint conviction is predicated." *Leon Williams*, 368 Pa.Superior Ct. at 323, 534 A.2d at 104–05.

The panel majority rejected the Commonwealth's contention that a separate and distinct interest of the Commonwealth is vindicated by the unlawful restraint conviction. The panel majority, however, also rejected Williams' claim

that aggravated assault and attempted robbery merged for sentencing purposes, finding that each conviction vindicated a different interest of the Commonwealth.[5]

When the case reached the Supreme Court, that Court began its analysis by explaining the merger test it had previously announced in *Michael Williams*. The Court reiterated the first prong of that test as follows:

> Crimes "necessarily involve" each other, therefore, if one of two possible scenarios occurs: (1) the crimes have the same elements (i.e., lesser included offenses), or (2) the facts of the case are such that although the elements of the crimes differ, the facts which establish one criminal charge also serve as the basis for an additional criminal charge. An example of this is the case at bar, where the facts of throwing the victim down and beating her simultaneously establish the factual basis for the crimes of aggravated assault and unlawful restraint.

*Leon Williams*, 521 Pa. at 561, 559 A.2d at 27–28 (footnotes omitted). The Supreme Court then defined a lesser included offense as "a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense." *Id.*, 521 Pa. at 561, 559 A.2d at 28 n. 2.

The Supreme Court continued with a description of the second prong of the *Michael Williams* merger test as follows:

5. This Court's panel in *Leon Williams* utilized the merger test announced by the Pennsylvania Supreme Court in *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987). This test required that merger be limited to situations where each conviction arises from the same criminal act or episode and each offense "necessarily involves" the other, such that proof of the same acts is required to prove each crime. Even if crimes necessarily involve one another, however, under *Michael Williams* the crimes do not merge if the separate offenses vindicate substantially different interests.

Judge Wieand filed a concurring and dissenting opinion in *Leon Williams*, agreeing with the majority's finding that aggravated assault and attempted robbery convictions vindicated different interests. He parted with the majority's finding that a conviction for unlawful restraint vindicated the same interests as convictions for aggravated assault and attempted robbery, so that unlawful restraint would merge for sentencing purposes with the other two offenses. Judge Wieand would have affirmed the judgment of sentence.

If it is determined that the elements of the crimes charged are the same, or that the same operative facts underlie the crimes charged, the court must then, under the analysis set out in *Michael Williams,* determine whether the Commonwealth has substantially different interests in prosecuting the defendant for two or more separate crimes. What the court is really asked to do at the second stage of the analysis is make two determinations: (1) what interests of the Commonwealth are at stake in the offenses charged; and (2) how the facts of the case bear on the Commonwealth's interests.

\* \* \* \* \* \*

*In other words, at step two a court has to determine exactly how the Commonwealth has been injured (how many "evils" are present) based on the court's understanding of the Commonwealth's interests and the facts of the case.*

*Id.* at 28 (emphasis in original).

While recognizing that it had only recently promulgated this analysis for merger, the Supreme Court in *Leon Williams* concluded the analysis was flawed and must be abandoned. The majority reached this conclusion on two bases: (1) the interests of the Commonwealth in the enactment of any given criminal statute are difficult to define with any precise degree of certainty; and (2) the merger test of *Michael Williams* offers no guidance in establishing how many offenses against the Commonwealth had been committed.

In view of these shortcomings, the majority in *Leon Williams* held that, except for lesser included offenses, the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime was abolished and abrogated. The majority therefore concluded that the crimes of aggravated assault and unlawful restraint do not merge because one of the crimes is not a lesser included offense of the other; apart from the rejected argument that the convictions serve the same interest of the Commonwealth, there exists no argu-

ment in favor of merger. The high court in *Leon Williams* did not address that part of the first prong of the *Michael Williams* test which leads to a finding of merger if the crimes necessarily involved each other. Because the *Leon Williams* Court clearly held that only lesser included offenses would merge, we can only conclude that the "same operative facts" part of the merger test, i.e., although the elements differ the crimes merge if the same factual basis supports the conviction (fact-based merger), has likewise been abandoned.

In *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989), Weakland pleaded guilty or *nolo contendere* to various crimes arising from the murder of Cecil Rash and the robbery of a gas station owned by the decedent and his wife. Weakland pleaded guilty to two counts of robbery and one count of criminal conspiracy, entered a plea of *nolo contendere* to one count of kidnapping, four counts of aggravated assault, one count of theft, and a general charge of homicide. Following denial of post-trial motions, Weakland was sentenced to life imprisonment on the murder conviction—at a degree of guilt hearing, a three-judge panel determined that Weakland was guilty of first degree murder—and fifty-three and one-half to one hundred seven years on the remaining charges, to run consecutively to the life sentence.

The Pennsylvania Supreme Court granted the Commonwealth's petition for allocatur in order to consider whether this Court properly treated the merger questions raised by Weakland's convictions. The merger questions involved the merger of two of the four assault charges, one into another assault charge and the other into a kidnapping charge. The Supreme Court analyzed the facts of the robbery and murder.

The first merger question dealt with two assaults inflicted upon Mrs. Rash—when Weakland's brother knocked her down and ripped a telephone off the wall and then again when Weakland shot her. The Supreme Court held that these two assaults constituted separate acts sufficiently

supported by different facts; therefore, this Court erred in merging the two convictions.[6]

The second merger question in *Weakland* was whether this Court erred in merging the charge of aggravated assault upon Mr. Wilson, a customer of the gas station who was forced to drive Weakland away from the scene, with the charge of kidnapping Mr. Wilson. While this Court found that two distinct assaults were perpetrated upon Mr. Wilson, we held that the second assault, i.e., shoving a gun into Mr. Wilson's face in order to commandeer his car, merged with the kidnapping conviction for sentencing purposes. According to this Court, the second assault was the same act upon which the Commonwealth relied to prove the force necessary to establish the elements of the charge of kidnapping. Based on these conclusions, this Court held that, because the assault and kidnapping charges were, in effect, one crime, they merged for sentencing purposes.

█ Before the Pennsylvania Supreme Court, the Commonwealth argued there existed evidence of Mr. Wilson being held at gunpoint, in addition to Weakland's act of shoving a gun in Wilson's face, to support the force element of a kidnapping charge. While recognizing its decision in *Leon Williams*, the Supreme Court opined the merger doctrine would be abused if it were used "to give the criminal 'rights' to unlimited violence in perpetrating any of the crimes requiring violence or a threat of violence as an element." *Weakland*, 521 Pa. 362, 555 A.2d at 1232. Thus, the Supreme Court stated:

> We agree with Superior Court [in our discussion in *Commonwealth v. Leon Williams* ] that when multiple acts of violence accompany another crime which requires violence

6. In disposing of the first issue raised on appeal, the Supreme Court held that this Court erred in failing to consider evidence presented at the degree of guilt hearing, as well as at the guilty plea hearing. This Court merged these two convictions because the separate evidence supporting the initial assault of Mrs. Rash (upon which the Supreme Court relied) was not presented at the guilty plea hearing.

The Supreme Court also concluded that Weakland was responsible for the initial assault perpetrated upon Mrs. Rash under the accomplice theory.

or threat of violence as an element, convictions of multiple violent acts should not merge for sentencing purposes beyond that which is necessary to supply the element of violence or threat for the additional crime.

*Id.* at 1233. The high court went on to differentiate its *Weakland* holding from the holding announced in the companion case, *Leon Williams:*

In this case, as in the companion case of *Commonwealth v. Leon Williams*, [521 Pa. 556, 559 A.2d 25 (1989)] also decided this day, it has been our goal to simplify and explain the doctrine of merger as it relates to the facts presented. In *Leon Williams* we held that where the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses. That holding does not apply to the present case because the problem here is not whether the same facts support multiple convictions, but whether facts in evidence *additional* to those facts establishing aggravated assault, i.e., that [Weakland] continued to threaten Mr. Wilson with a handgun, should have been used to satisfy the threat or force element of kidnapping. It is our view that the additional facts should be used to satisfy the force or threat element of kidnapping, for otherwise, a violent criminal would be permitted to perpetrate multiple crimes while suffering only partial liability for the harm he has wrought.

*Id.* The majority in *Weakland* concluded with a summary of the present merger test:

For the foregoing reasons, we hold that if a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime. If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Id.*[7] The Supreme Court then stated that, under the facts presented, the merger of the aggravated assault charge with the kidnapping charge was inappropriate because the act of holding Mr. Wilson at gunpoint was separate and apart from the aggravated assault and was sufficient to supply the element of threat necessary for the kidnapping conviction.

This Court has succinctly described the holdings of *Leon Williams* and *Weakland* as follows:

> In order for offenses to merge, one offense must be a "lesser included offense" of the other, *i.e.* the elements of the lesser offense must be identical to and capable of being wholly subsumed within the elements of the greater offense [*See Leon Williams*, 559 A.2d at 28 n. 2], and the factual predicate for the lesser included offense must also be part of the factual predicate *required* to establish the greater offense. [*See Weakland.*]

*Commonwealth v. Yates*, 386 Pa.Super. 282, 287, 562 A.2d 908, 911 (1989) (emphasis in original). *See also, Commonwealth v. Burkhardt*, 526 Pa. 341, 349, 586 A.2d 375, 379 (1991) (concurring opinion by Flaherty, J.) (*Leon Williams* requires merger only where *elements* of one crime are subsumed into the *elements* of another crime).[8]

---

**7.** The dissent argues that the result in the present case runs contrary to the first sentence of this citation from *Weakland* wherein the Supreme Court stated that when one act of criminal violence is the only basis upon which the perpetrator can be convicted of another crime, the act will merge into the other crime. Initially, we note that *Weakland* involved multiple acts of criminal violence, and therefore the "holding" in *Weakland* regarding the effect of a single act is dicta. Moreover, the dissent reads this "holding" out of context. This statement must be read in the context of the Supreme Court's earlier comments cited above. There the high court stated its holding in *Williams* as follows: "[W]here the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses." *Weakland* 521 Pa. at 363, 555 A.2d at 1233. Thus, the statement in *Weakland* cited by the dissent must be read to require merger only where the two crimes predicated on one act are lesser included offenses.

**8.** In *Burkhardt*, Justice McDermott once again attempted to alter the test for merger in Pennsylvania. Because the opinion only garnered

Thus, the "lesser included offense" test of merger must be applied to the crimes of attempted murder and aggravated assault. The relevant statutory provisions of these two crimes are as follows: Section 2702(a)(1) defines aggravated assault as the attempt to cause "serious bodily injury to another, or causing such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1) (Purdon 1983 & Supp.1991). Criminal attempt to commit murder is defined by reading the attempt statute and the homicide statute together; a person commits criminal attempt to commit murder when, with malice and specific intent to cause the death of another person, he does any act which constitutes a substantial step toward the commission of that death. 18 Pa.C.S. § 901(a) and § 2501(a) (Purdon 1983).

A recent panel of this Court has discussed the potential for merger of the two crimes at issue herein, *under the current merger test of Leon Williams*, in *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990), *alloc. denied*, 527 Pa. 585, 588 A.2d 508 (1991). Fuller was solicited by another man to "rough up" the victim for the sum of $500.00. Fuller agreed. Then a man named Beavers offered to perform the task for Fuller. Fuller drove Beavers to the victim's house. Beavers entered the victim's home and shot him. Upon hearing the shots, Fuller immediately departed, leaving Beavers at the scene. As a result of the shooting, the victim was hospitalized for one month, lost thirteen pints of blood, and partially lost the use of his right hand.

Fuller was originally charged with the three inchoate crimes of attempt to commit criminal homicide, conspiracy to commit criminal homicide, and solicitation to commit criminal homicide. Immediately prior to trial, however, the

one other vote, however, it did not change the law and is not precedent. We do note that at least three of the Justices would still follow the merger test established in *Leon Williams* and *Weakland*. *See Burkhardt* (Concurring Opinion by Flaherty, J., joined by Nix, C.J. and Cappy, J.).

Commonwealth sought to amend the indictment and information to include an aggravated assault charge. This motion was granted by the trial court. Following the close of the Commonwealth's case, the trial court granted Fuller's demurrers to the attempted criminal homicide and some of the related inchoate offenses. Fuller was convicted and sentenced on the remaining charges. Fuller then filed a direct appeal to this Court.

Among the issues raised in *Fuller* was whether the trial court committed prejudicial error in allowing the amendment of the information to include aggravated assault. In response, the Commonwealth alleged that aggravated assault is a lesser included offense of attempted murder and, therefore, merger was proper. While the *Fuller* panel nevertheless held the amendment proper because 1) the crimes arose out of the same set of facts and 2) Fuller was placed on notice of his criminal conduct, the panel stated its disagreement with the claimed merger of the two crimes. In reaching its conclusion, the panel first noted the definition of a lesser included offense:

> To quote from [*Leon* ] *Williams,* 521 Pa. at 561, 559 A.2d at 28 n. 2., "[a] lesser included offenses [sic] is a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense." In other words, it must be impossible to commit the greater offense without also committing the lesser included offense. Instantly, it is obvious when the elements of criminal attempt murder and aggravated assault are compared that a criminal attempt murder can occur without a constituent aggravated assault.

*Fuller,* 396 Pa.Superior Ct. at 614, 579 A.2d at 884. The *Fuller* panel then listed the elements of each crime as follows:

> It is crucial to note that the word "attempt" as used in the aggravated assault statute does not carry the same meaning as the more general usage of "attempt" in defining the inchoate crime. With respect to aggravated assault, an "attempt" requires more than a mere "substantial step" towards commission, rather it requires at

least a simple assault. See *Commonwealth v. Russell,* 313 Pa.Super. 534, 538–42, 460 A.2d 316, 319–320 (1983), quoting *Commonwealth v. Alexander,* 477 Pa. 190, 193–94, 383 A.2d 887, 889 (1978). After analyzing the elements of criminal attempt murder and aggravated assault, it is obvious aggravated assault is not a lesser included offense since every element of aggravated assault is not necessarily included in criminal attempt of murder.

*Fuller,* 396 Pa.Superior Ct. at 614–615, 579 A.2d at 884. The panel next provided an example of where merger would *not* be appropriate:

For example, hiring a contract killer to assassinate one's enemy constitutes a "substantial step" towards commission of a murder and could result in a conviction for criminal attempt murder. However, the same act is clearly insufficient to support an aggravated assault conviction. Without a doubt, certain factual scenarios can result in a conviction for both criminal attempt murder and aggravated assault, but that does not require the offenses to have a lesser included/greater offense relationship. See *[Leon ] Williams,* 521 Pa. at 563, 559 A.2d at 29 (unlawful restraint arising from same incident as an aggravated assault is not a lesser included offense and does not merge).

*Fuller,* 396 Pa.Superior Ct. at 615, 579 A.2d at 884. The *Fuller* panel concluded its analysis of the merger question by stating that if aggravated assault, a first degree felony, would merge with criminal attempt murder, a second degree felony, the result would be a sentence imposed on the greater offense which happens to carry a lesser penalty. The *Fuller* panel suggested this type of sentencing would be inconsistent with well-established precedent. *See Commonwealth v. Sayko,* 333 Pa.Super. 265, 482 A.2d 559 (1984) (when crimes merge for sentencing purposes, the one for which a defendant may be sentenced is the one to which the legislature has attached the greater penalty); *Commonwealth v. O'Brien,* 356 Pa.Super. 294, 514 A.2d 618 (1986), *alloc. denied,* 515 Pa. 576, 527 A.2d 537 (1987) (same).

In the present case, a single act, i.e., the gunshot to the victim's neck, supports Anderson's convictions for both aggravated assault and attempted murder. Thus, the crimes will merge for sentencing purposes *only if* the one crime is a lesser included offense of the other. *Weakland,* 521 Pa. at 363, 555 A.2d at 1233. For the reasons that follow, we find that aggravated assault is not a lesser included offense of attempted murder.

■ *Fuller* held that aggravated assault is not a lesser included offense of attempted murder—and therefore merger did not apply—because the "attempt" conduct required for each of the two offenses differs. We also conclude that aggravated assault is not a lesser included offense of attempted murder, but for reasons different from those offered by the *Fuller* panel. Contrary to the *Fuller* panel's position, case law established by this Court holds that a significant step toward the perpetration of the crime satisfies the attempt element of aggravated assault. *Commonwealth v. Carter,* 329 Pa.Super. 490, 478 A.2d 1286 (1984); *Commonwealth v. Mayo,* 272 Pa.Super. 115, 414 A.2d 696 (1979). Clearly, "attempted aggravated assault" and attempted murder share the same requirement of a substantial step toward the completed crime.

We believe that the *Fuller* panel did not address what we consider to be the truly distinguishing factor between the two crimes—the fact that attempted murder is always an inchoate crime and aggravated assault can be, and *under the facts of this case* is, a completed crime. For the reasons which follow, we find that, in this situation presented in the instant appeal, aggravated assault is not a lesser included offense of attempted murder.

■ A lesser included offense analysis is complicated in the present case by the fact that an aggravated assault can be committed in two ways, to-wit, attempt to cause or causes serious bodily injury. 18 Pa.C.S. § 2702(a). In short, the language of the aggravated assault section encompasses both an inchoate and completed crime. Thus,

when both attempted murder and aggravated assault are charged, two possible scenarios arise: attempted murder charged together with the attempt form of aggravated assault and attempted murder charged together with a completed aggravated assault. The present case falls under the latter situation.

 Initially, we note that had Appellant successfully caused the death of the victim, established case law clearly holds that aggravated assault would merge with the murder. *See, e.g., Commonwealth v. Musselman,* 483 Pa. 245, 247 n. 1, 396 A.2d 625, 625–26 n. 1 (1979). In this situation, two completed or choate crimes were committed, one of which is a lesser included offense of the other. Clearly, the *actual* infliction of death includes the actual infliction of serious bodily injury.

 When attempted murder is charged together with the attempt form of aggravated assault, it would appear that the two should merge because both crimes are inchoate and, as noted above, each requires a substantial step toward commission of the crime. However, we find that the mental state of the actor prevents merger. In *Commonwealth v. Griffin,* 310 Pa.Super. 39, 456 A.2d 171 (1983), Griffin was convicted of robbery, conspiracy, attempted murder, terroristic threats, and simple assault following a bank robbery. Among the issues raised on appeal to this Court was whether the trial court erred in instructing the jury that the Commonwealth need only prove an intention to commit murder of any degree in order to convict Griffin of attempted murder. Griffin requested a curative instruction to the effect that a specific intention to kill was necessary for a conviction of attempted murder. The *Griffin* panel agreed, reasoning as follows:

The question squarely presented to us is whether someone can attempt to commit murder of the second or third degree. We think not. A person commits an attempt when, *with intent to commit a specific crime,* he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901. Murder

of the second or third degree occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an attempt to commit second or third degree murder would seem to require proof that a defendant *intended* to perpetrate an *unintentional* killing—which is logically impossible. While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results; it does not follow that those persons would be guilty of *attempted* murder if a killing did not occur. They would not be guilty of attempted murder because they did not *intend* to commit murder—they only intended to commit a felony or to commit bodily harm.

*Griffin,* 310 Pa.Superior Ct. at 50–51, 456 A.2d at 177 (emphasis in original). The *Griffin* panel then cited to the *Handbook on Criminal Law,* by LaFave and Scott, wherein the editors explain why it is necessary to prove an intent to kill in order to sustain the charge of attempted murder:

Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard of human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (*i.e.,* the death of another).

*Griffin,* 310 Pa.Superior Ct. at 51, 456 A.2d at 177 (citing LaFave and Scott, *Handbook on Criminal Law,* § 59 at 428–29 (1972) (footnotes omitted)).

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ From the discussion in *Griffin,* we conclude that the intent to kill necessary to sustain a conviction for attempted murder is separate and distinct from any other intent, and, therefore, cannot include any other type of intent. Attempted murder requires a specific intent to kill, an intent to cause a particular result. Attempted murder cannot also include, therefore, an unintended consequence, i.e., an intent to inflict serious bodily injury. As stated above, an actual killing includes the actual infliction of serious bodily injury. However, when dealing with the attempt to commit murder or the attempt to commit an aggravated assault, each crime is a "specific intent" crime because the result specifically intended is either a completed murder or a completed aggravated assault. Therefore, when considering the separate mental states needed to support a conviction for these two inchoate crimes, it becomes evident that the "specific intent" elements of attempted aggravated assault and attempted murder are different—a specific intent to kill is not a specific intent to commit serious bodily injury. To conclude otherwise vitiates the concept of "a specific intent." Thus, under the current merger test set forth in *Leon Williams,* attempted aggravated assault is not a lesser included offense of attempted murder because both crimes require a *different* specific intent to bring about a *different* specific result. An intent to inflict serious bodily injury is separate and distinct from an intent to kill and, therefore, cannot be wholly subsumed within the intent to kill element of attempted murder. Given the distinct mental state elements of these two crimes, aggravated assault is not a lesser included offense of attempted murder and merger of these two crimes is not appropriate.

▮▮▮▮▮▮ The dissent argues that such logic renders the intent necessary for attempted aggravated assault and attempted murder mutually exclusive. It then questions the legality of convicting Appellant of both crimes. The answer to such a contention is that under the facts of the instant

case, we are not presented with two inchoate crimes.[9] There can be no doubt that Appellant caused serious bodily injury to the victim. Thus, the present case involves the scenario wherein an inchoate and a choate crime are charged; Appellant completed the aggravated assault but not the murder. The actual infliction of serious bodily injury is not a necessary element of attempted murder, for attempted murder can be committed without inflicting the slightest degree of harm.

The above-mentioned scenario in *Fuller* provides an illustration of this point. Additionally, to illustrate, suppose a man lay in wait outside a window of his neighbor's house. As the neighbor enters the room, the man raises a rifle, aims at the heart of the neighbor, and yells, "Die, neighbor!" At that precise moment, the police, having heard the man's declaration, grab the rifle before he can fire the gun. The man has committed the crime of attempted murder without inflicting serious bodily injury.

In committing the substantial step necessary to support a conviction of attempted murder, Appellant completed the commission of a different crime that cannot, under the circumstances, be wholly subsumed within attempted murder. Thus, that completed crime, aggravated assault, is not a lesser included offense and does not merge for sentencing purposes.

An additional, independent basis for finding that the two crimes do not merge is the fact that a "lesser included offense" cannot be a higher-graded felony than the crime in which it is supposedly included. *See Commonwealth v. Gouse*, 287 Pa.Super. 120, 127 n. 3, 429 A.2d 1129, 1132 n. 3 (1981) (lesser included offense must be less serious in terms of "classification and degree" than the greater offense). By definition, then, a first degree felony cannot merge into a second degree felony. *Commonwealth*

---

**9.** We limit our discussion of merger to those facts with which we are presented. We do not address, therefore, a situation where a defendant is charged and convicted of both attempted murder and attempted aggravated assault.

*v. Adams,* 350 Pa.Super. 506, 504 A.2d 1264 (1986) (*en banc*), *alloc. denied,* 515 Pa. 603, 529 A.2d 1078 (1987). Such a result is logical. As stated by the panel in *Fuller:*

> Further, it is analytically consistent with the purposes of criminal jurisprudence to punish a criminal who completes an aggravated assault and causes serious bodily injury more severely than a criminal who merely takes a "substantial step" towards completion of a murder. See *Solem v. Helm,* 463 U.S. 277, 293, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637, 651, (1983) ("It is generally recognized that attempts are less serious than completed crimes."); Mode [1] Penal Code § 5.05.

*Commonwealth v. Fuller,* 396 Pa.Superior Ct. at 615–616, 579 A.2d at 884–85.

▇▇▇ Because aggravated assault is neither a lesser included offense of attempted murder nor a lesser degree felony, the trial court properly sentenced Anderson on both charges.[10]

Judgment of sentence is affirmed.

WIEAND, J., files a Dissenting Opinion in which McEWEN, DEL SOLE and BECK, JJ. join.

WIEAND, Judge, dissenting.

The majority holds that where a defendant has been convicted of attempted murder and aggravated assault based upon a single act of shooting his victim, separate sentences may be imposed for each crime because aggravated assault is not a lesser included offense of attempted murder. Because I am convinced that aggravated assault is, in fact, a lesser included offense of attempted murder, I would hold that such crimes must merge for purposes of sentencing when they are based upon a single criminal act. Accordingly, I respectfully dissent.

**10.** Anderson also argues that the current merger test cannot be applied retroactively to his case. We find no merit to this contention. *See Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985) (generally, all decisions are to be applied retroactively to cases on direct appeal).

The test for merger of offenses which is currently utilized in this Commonwealth was established by the Supreme Court in *Commonwealth v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989) and *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989). This test has been summarized by the Superior Court in the following manner:

Crimes will not merge for sentencing purposes unless one of the crimes is a lesser included offense of the other. *Commonwealth v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989). To determine whether one offense is a lesser included offense of the other, we must determine whether the elements of violation A, the lesser, are included in violation B, the greater. *Commonwealth v. Pemberth,* 339 Pa.Super. 428, 489 A.2d 235 (1985). Crimes will merge where a defendant commits one act of criminal violence and that act is the only basis upon which he may be convicted of the other crime. *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989). If he commits multiple criminal acts beyond that necessary to establish the bare elements of the additional crime, then the crimes will not merge. *Id.*

*Commonwealth v. Blassingale,* 391 Pa.Super. 395, 402–403, 571 A.2d 426, 430 (1990). See also: *Commonwealth v. Servich,* 412 Pa.Super. 120, 134, 602 A.2d 1338, 1345 (1992); *Commonwealth v. Yates,* 386 Pa.Super. 282, 287–288, 562 A.2d 908, 911 (1989).

In the instant case, it is undisputed that appellant's convictions for both attempted murder and aggravated assault were based upon a single act of criminal violence, to wit, his shooting Norma De Booth in the back of the neck. The majority holds, nevertheless, that because aggravated assault and attempted murder require proof of different intents, aggravated assault cannot be a lesser included offense of attempted murder and the two crimes cannot merge for purposes of sentencing.[1] I am unable to agree with this analysis.

1. Specifically, the majority reasons as follows:

Pursuant to 18 Pa.C.S. § 2702(a)(1), "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." A person is guilty of attempted murder, if, with a specific intent to kill another, he does any act which constitutes a substantial step toward the commission of an intentional killing. See: 18 Pa.C.S. § 901(a); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 50–52, 456 A.2d 171, 177–178 (1983). After careful study of the elements of these offenses, I am convinced that aggravated assault is a crime which is invariably included in the crime of attempted murder. Thus, when a defendant commits the crime of attempted murder he will, without further proof, commit also the crime of aggravated assault.

If the intent necessary to establish attempted murder is a specific intent to kill and the intent necessary for an aggravated assault is a separate intent to cause serious bodily injury, as the majority suggests, then the two crimes, in fact, are mutually exclusive. How, then, could appellant be convicted of both offenses? According to the majority's rationale, appellant either intended to kill his victim or to

[A]n actual killing includes the actual infliction of serious bodily injury. However, when dealing with the attempt to commit murder or the attempt to commit an aggravated assault, each crime is a "specific intent" crime because the result specifically intended is either a completed murder or a completed aggravated assault. Therefore, when considering the separate mental states needed to support a conviction for these two inchoate crimes, it becomes evident that the "specific intent" elements of attempted aggravated assault and attempted murder are different—a specific intent to kill is not a specific intent to commit serious bodily injury. To conclude otherwise vitiates the concept of "a specific intent." Thus, under the current merger test set forth in *Leon Williams*, attempted aggravated assault is not a lesser included offense of attempted murder because both crimes require a *different* specific intent to bring about a *different* specific result. An intent to inflict serious bodily injury is separate and distinct from an intent to kill and, therefore, cannot be wholly subsumed within the intent to kill element of attempted murder. Given the distinct mental state elements of these two crimes, aggravated assault is not a lesser included offense of attempted murder and merger of these two crimes is not appropriate.
Majority Opinion at p. 224.

inflict serious bodily injury upon her. I cannot accept the logic of the majority's contention. It is clear to me, rather, that if one intends to kill another person, he also intends, of necessity, to inflict serious bodily injury upon that person.[2] If my view is correct, then the intent to cause serious bodily injury would necessarily be included in and be subsumed by the specific intent to kill which is an essential element of the crime of attempted murder. The intent to cause serious bodily injury, I believe, is a necessary component of a specific intent to kill, and when a specific intent to kill has been proven, it is unnecessary to establish further that the actor intended to inflict serious bodily injury.

Unlike attempted murder, aggravated assault does not in all cases require proof of a specific intent to cause the proscribed harm. Instead, one may be convicted of aggravated assault as a result of a reckless infliction of serious bodily injury upon another. This leads to the second problem which I have with the majority's analysis. If taken to its logical conclusion, the majority's holding will, in effect, preclude the merger of lesser crimes of general intent into more serious specific intent crimes in all instances in which the crimes are based upon the same physical act. For example, if the element of specific intent to kill sets apart the crime of attempted murder from aggravated assault and precludes the two from merging, does the same analysis apply to the crimes of first degree murder and aggravated assault? It appears to me that under the majority's holding, aggravated assault will not be a lesser included offense of first degree murder because of the differing intent requirements for the two offenses. Thus, if the majority's holding is applied logically, a defendant can be sentenced separately for both aggravated assault and first degree murder every time a single physical act results in the intentional killing of another. Such a result, however,

2. Serious bodily injury is defined in the Crimes Code as *"[b]odily injury which creates a substantial risk of death* or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301 (emphasis added).

would be inconsistent with established law in this Commonwealth, as even the majority recognizes.

The law in this Commonwealth is clear that aggravated assault is a lesser included offense of murder. In *Commonwealth v. Musselman*, 483 Pa. 245, 247 n. 1, 396 A.2d 625, 625–626 n. 1 (1979), the Supreme Court observed that the crimes of aggravated assault and recklessly endangering another person are lesser included offenses of murder because "[t]he elements required to be proved on both charges are all necessary, though not sufficient, to establish the elements of murder." The Supreme Court further observed in *Commonwealth v. Zimmerman*, 498 Pa. 112, 119, 445 A.2d 92, 96 (1981), that "[i]t is clear that assault is a constituent element of all the grades of homicide and does not require the proof of a fact that the various grades of homicide do not." See also: *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 105, 21 A.2d 920, 921 (1941) ("Two crimes *may be* successive steps in *one* crime and therefore merge, as, e.g., ... assault and battery is merged into murder...."). Because aggravated assault is a lesser included offense of murder, therefore, it would seem to follow logically that aggravated assault is also a lesser included offense of attempted murder. Cf. *Commonwealth v. Griffin, supra*, 310 Pa.Super. at 53, 456 A.2d at 178 ("Recklessly endangering another is a lesser included offense of the crime of murder, *Commonwealth v. Musselman*, 483 Pa. 245, 396 A.2d 625 (1979), and it follows logically that it is also a lesser included offense of attempted murder.").

Prior decisions which have considered the issue now before this Court have held that where convictions for aggravated assault and attempted murder are based upon the same criminal conduct the two offenses must merge for purposes of sentencing.[3] Thus, in *Commonwealth v. Shur-*

---

**3.** The decision of a panel of the Superior Court in *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990) is not precedent for the majority's holding that aggravated assault and attempted murder cannot merge. The issue before the Court in *Fuller* was whether the criminal information had been properly amended and not the legality

*galla,* 371 Pa.Super. 244, 537 A.2d 1390 (1988), the Superior Court reasoned as follows:

> Where the essential elements of one offense are also the essential elements of another offense, the lesser offense merges into the greater one. *Commonwealth v. Mitchell,* 319 Pa.Superior Ct. 170, 465 A.2d 1284 (1983). In the instant case the Commonwealth and the trial court agree with appellant's contention that the aggravated assault offense merges with the one for attempted murder. This Court also agrees that the offense merged as the one act of shooting the victim constituted the essential elements of both offenses. We hold that the offenses are merged in this case.

*Id.,* 371 Pa.Super. at 247, 537 A.2d at 1391. See also: *Commonwealth v. Ford,* 315 Pa.Super. 281, 292–293, 461 A.2d 1281, 1286–1287 (1983) (where same facts which established crime of attempted murder were also used to establish aggravated assault and recklessly endangering another person, the latter two crimes will merge with attempted murder for purposes of sentencing); *Commonwealth v. Miranda,* 296 Pa.Super. 441, 461–462, 442 A.2d 1133, 1143–1144 (1982) (conviction for aggravated assault merges with conviction for attempted murder where no additional facts are required to establish aggravated assault). Compare: *Commonwealth v. Pifer,* 284 Pa.Super. 170, 185, 425 A.2d 757, 764–765 (1981) (aggravated assault did not merge with attempted murder where each offense was based upon separate criminal acts of the defendant).

Because aggravated assault is a lesser included offense of attempted murder and because appellant's convictions for these offenses were based upon a single criminal act, I

of the sentence imposed. Therefore, the discussion of merger was unnecessary to the decision in *Fuller,* and, hence, was dictum. Moreover, as the majority of this Court correctly ascertains, the *Fuller* Court was incorrect when it concluded that the word "attempt", as used in the aggravated assault statute, did not have the same meaning as in defining the inchoate crime of attempt. Because such reasoning was the *Fuller* Court's basis for concluding that aggravated assault was not a lesser included offense of attempted murder, I must conclude that such dictum was erroneous and should be overruled.

would hold that appellant's convictions merged for purposes of sentencing. By permitting appellant to be sentenced for both attempted murder and aggravated assault, the majority, under the circumstances of this case, has failed to follow the explicit holding of the Supreme Court in *Commonwealth v. Weakland, supra,* wherein the Court declared:

> *[W]e hold that if a person commits one act of criminal violence, and that act is the only basis upon which he may be convicted of another crime, the act will merge into the other crime.* If, however, the actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes.

*Id.,* 521 Pa. at 364, 555 A.2d at 1233 (emphasis added).

Under the facts of the instant case, the imposition of separate sentences for attempted murder and aggravated assault will also violate the constitutional guarantee against being placed twice in jeopardy for the same offense. "Among the protections embodied in the double jeopardy clauses of the Constitutions of the United States and this Commonwealth is the prohibition against 'multiple punishment for the same offense at one trial.'" *Commonwealth v. Houtz,* 496 Pa. 345, 347, 437 A.2d 385, 386 (1981), quoting *Commonwealth v. Mills,* 447 Pa. 163, 169, 286 A.2d 638, 641 (1971). "Where consecutive sentences are imposed at a single trial, double jeopardy prevents the court from exceeding its legislative authorization by imposing multiple punishments for the 'same offense.'" *Commonwealth v. Tarver,* 493 Pa. 320, 325, 426 A.2d 569, 572 (1981). See: *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The means of determining whether there exists a single offense for purposes of the prohibition against multiple punishment is well settled:

> " 'The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.'"

*Commonwealth v. Tarver,* 493 Pa. at 325, 426 A.2d at 572, quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Under this test, if proof of one crime necessarily proves another, punishment for both crimes is forbidden. See *Commonwealth v. Tarver, supra; Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1975).

*Commonwealth v. Houtz, supra,* 496 Pa. at 348, 437 A.2d at 386–387 (footnote omitted).

When this test is applied to the facts of the instant case, it becomes apparent immediately that appellant's single act constituted both aggravated assault and attempted murder. Both offenses were established by precisely the same act. That act was the shooting of the victim in the back of the neck. Once the Commonwealth established appellant's guilt of attempted murder, no other proof was necessary to convict him also of aggravated assault.

'As is invariably true of a greater and lesser included offense, the lesser offense ... requires no proof beyond that which is required for conviction of the greater.... The greater offense is therefore by definition the "same" for purposes of double jeopardy as any lesser offense included in it.'

*Commonwealth v. Zimmerman, supra,* 498 Pa. at 119, 445 A.2d at 96, quoting *Brown v. Ohio, supra,* 432 U.S. at 168, 97 S.Ct. at 2226–2227, 53 L.Ed.2d at 195–196.[4]

The final reason the majority has given in support of its holding that aggravated assault does not merge with at-

4. Even where two crimes constitute the same offense under the *Blockburger* test, however, separate sentences for each offense would be permissible if there were a clear legislative intent that separate punishments be imposed. See: *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983). I can discern no clear legislative intent to impose separate sentences for attempted murder and aggravated assault convictions when they are based upon a single act by the defendant.

tempted murder is that the legislature has attached the greater penalty to aggravated assault, making it a felony of the first degree, while grading attempted murder as a felony of the second degree. Frankly, I am unpersuaded by this argument. In *Commonwealth v. Nelson*, 452 Pa. 275, 305 A.2d 369 (1973), Justice (now Chief Justice) Nix, writing in a concurring and dissenting opinion, observed that "[t]he test of which crime merges with another is not dependent upon a comparison of their respective maximum penalties but whether the lesser crime is that which is a necessary ingredient of the greater." *Id.*, 452 Pa. at 281, 305 A.2d at 372 (footnote omitted). I agree. Moreover, I find this reasoning to be similarly applicable under the test for merger established by the Supreme Court in *Commonwealth v. Williams* and *Commonwealth v. Weakland*. That test requires a court to focus upon the elements of the crimes to determine whether one is a lesser included offense of the other and to determine further whether the convictions arose from the same factual predicate. The *Williams–Weakland* merger analysis simply does not focus upon which offense has been given the greater penalty by the legislature. Therefore, I am of the opinion that it is fallacious to reason that aggravated assault cannot merge into attempted murder merely because the legislature has attached a greater penalty to the crime of aggravated assault.

Under the facts of the instant case, appellant has been sentenced twice for the same offense. Because in my judgment such a result is forbidden by both the doctrine of merger and the constitutional guarantee against double jeopardy, I respectfully, but vigorously, dissent. I would reverse and remand for resentencing.[5]

McEWEN, DEL SOLE and BECK, JJ. join in this Dissenting Opinion.

---

**5.** I agree with the majority that appellant is not entitled to a new trial.